## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**LARRY CURTIS and MARGIE CURTIS,**                              **PLAINTIFFS**
**as Guardians of HUNTER W. CURTIS, and**
**DWIGHT HOUSTON, on behalf of themselves**
**and all others similarly situated**

**v.**                              **Case No. 4:22-CV-00328-LPR**

**LARRY TAYLOR, individually and in his**
**official capacity as Monroe County Judge, JAY HILL,**
**individually and in his official capacity, SARAH**
**HUCKABEE SANDERS, in her official capacity**
**as Governor of the State of Arkansas, MICHAEL**
**NEAL, in his official capacity as Sheriff of Monroe County**         **DEFENDANTS**

## <u>ORDER</u>

This is principally a deliberate-indifference case, with allegations of disability discrimination to boot.  Plaintiffs allege that the Monroe County Jail is not able to adequately treat the mental and physical disabilities of two individuals—Hunter Curtis and Dwight Houston.  Plaintiffs further allege that the State of Arkansas refused to admit Mr. Curtis into the Arkansas State Hospital, even though the State Hospital would be able to provide adequate medical care.  Plaintiffs contend that the State's and County's failures to provide adequate medical care are violations of the United States Constitution.  Plaintiffs also claim that, because Mr. Curtis is not receiving medical care specifically for his mental disabilities, the State and County are violating the Rehabilitation Act and the Americans with Disabilities Act.  All Defendants have moved to dismiss.  For the reasons given below, the Court GRANTS those Motions.[1]  All claims in this case will be DISMISSED without prejudice.

---

[1] Cnty. Defs.' Mot. to Dismiss (Doc. 13); State Defs.' Mot. to Dismiss (Doc. 15).  Prior to the filing of the Amended Complaint, all Defendants had moved to dismiss the original Complaint.  *See* Cnty. Def.'s Mot. to Dismiss (Doc. 4); State Defs.' Mot. to Dismiss (Doc. 7).  Those pre-Amended Complaint Motions to Dismiss are DENIED as MOOT.

**BACKGROUND**

This case centers around two individuals—Hunter Curtis and Dwight Houston—and their experiences in the Monroe County Jail.  The Court takes the facts alleged in the Amended Complaint as true at this stage of the litigation.[2]

## I.    Hunter Curtis

Mr. Curtis suffers from schizophrenia.[3]  His mental illness is so severe that he is subject to a legal guardianship—Plaintiffs Larry and Margie Curtis are his guardians.[4]  They brought this action on behalf of Mr. Curtis.

Mr. Curtis has been in and out of the Monroe County Jail numerous times over the years.[5]  Several times throughout 2016 and 2017, Mr. Curtis was "strapped to [a] restraint chair . . . ."[6]  On one such occasion, Mr. Curtis was restrained "for hours on end without any bathroom breaks" and "soil[ed] himself . . . ."[7]  Plaintiffs say that using the restraint chair was a medically "inappropriate[]" way to deal with any difficulties caused by Mr. Curtis's mental illness, that the

---

The Court has changed the caption in this case to reflect that Sarah Huckabee Sanders is now the Governor of Arkansas.  This change has been made pursuant to Federal Rule of Civil Procedure 25(d).

[2]  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] Am. Compl. (Doc. 11) ¶ 7; *see also* Ex. 2 (Gore Report) to Am. Compl. (Doc. 11-2) at 2.

[4] Am. Compl. (Doc. 11) at 1; *see also* Feb. 10, 2023 Hr'g Tr. (Rough) at 3–4 (Plaintiffs' counsel confirming that Mr. Curtis is still under a legal guardianship).

[5] *See* Am. Compl. (Doc. 11) ¶ 6.  At oral argument, Plaintiffs' counsel indicated that many of Mr. Curtis's past stays in the County Jail were due to Arkansas's "compassionate arrest" statute.  *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 6. Plaintiffs' counsel further indicated a desire to challenge the constitutionality of that statutory scheme.  *See id.* at 53, 56–57.  This case in no way involves an attack on the compassionate-arrest statute.  The Amended Complaint doesn't clearly state any such claim.  Even if it did, such a challenge would not be properly brought in this case.  Mr. Curtis was in the Monroe County Jail as a pretrial detainee, not by virtue of a "compassionate arrest," so any compensatory-relief claims can't be tied to the compassionate-arrest statute.  And there would not be Article III standing for a prospective-injunctive-relief claim challenging the compassionate-arrest statute, because Mr. Curtis will for the foreseeable future be a pretrial detainee (either in the custody of the County Jail or the Arkansas State Hospital).  That means Mr. Curtis will not imminently be suffering any injury as a result of the compassionate arrest statute.  *See Frost v. Sioux City*, 920 F.3d 1158, 1162 (8th Cir. 2019).

[6] Am. Compl. (Doc. 11) ¶¶ 3, 6–7; Feb. 10, 2023 Hr'g Tr. (Rough) at 45.

[7] Am. Compl. (Doc. 11) ¶ 3.

officials in the County Jail knew as much, but that the County Jail officials didn't know what else to do because the "facility was incapable of caring for" Mr. Curtis.[8]  At oral argument, Plaintiffs' counsel clarified that the restraint chair is a bygone issue and that it is not what prompted Plaintiffs to bring this particular case.[9]  Instead, the restraint-chair allegations are seemingly intended to illustrate the inadequate medical services provided by the County Jail.

This is not the first time that Mr. Curtis has filed a lawsuit arising out of his time in the County Jail.  Mr. Curtis has previously "brought suit against the Monroe County Sheriff . . . ."[10] The operative Complaint does not detail, however, whether Mr. Curtis was suing based on medical-care issues similar to those at issue in the case at bar, or whether Mr. Curtis sued for something totally unrelated to the facts of the instant case.[11]  That previous case was ultimately settled; Plaintiffs do not explain whether the settlement included any admissions (implicit or explicit) of wrongdoing by any Monroe County officials.[12]

When Plaintiffs filed the operative Complaint in the instant case, Mr. Curtis was in the Monroe County Jail as a pretrial detainee.[13]  According to an April 8, 2022 "assessment" obtained by Plaintiffs from Glenda Gore—a Nurse Practitioner hired by Plaintiffs—Mr. Curtis was "suffering from psychosis" at the time of the assessment.[14]  Nurse Gore concluded that Mr. Curtis

---

[8] *Id.* ¶¶ 6–10.

[9] *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 7, 45.  Even if the restraint-chair allegations were meant to be part of the legal claims in this case, those allegations would not move the needle for Plaintiffs.  The allegation that the restraint chair was medically "inappropriate" is conclusory, as is the allegation that the County Jail officials knew the restraint chair was inappropriate.

[10] Am. Compl. (Doc. 11) ¶ 8.

[11] *Id.*

[12] *Id.*

[13] The Amended Complaint switches back and forth between indicating that Mr. Curtis is a pretrial detainee and a person who is in custody as the result of a conviction.  *See id.* ¶¶ 1, 56.  At oral argument, Plaintiffs' counsel clarified that Mr. Curtis is a pretrial detainee.  *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 2.

[14] Ex. 2 (Gore Report) to Am. Compl. (Doc. 11-2) at 3.

needed to "be transferred out of the Monroe County Jail, into a facility with adequate resources to help prevent further decline in his mental state, as well as for the safety of himself, and others."[15] Nurse Gore also reported that, at the time of her assessment, Mr. Curtis was receiving Haloperidol, Divalproex, and Benztropine.[16] Aside from that, there are no specific allegations of what was (or wasn't) happening in the County Jail. That is, nowhere in the operative Complaint do Plaintiffs allege what the County Jail could or should have been doing in order to provide adequate medical care to Mr. Curtis. The operative Complaint says only that, in Plaintiffs' view, the Monroe County Jail was not, and still is not, capable of providing adequate medical care to Mr. Curtis.

At some point during Mr. Curtis's most recent stint in the County Jail, Monroe County Sheriff Michael Neal tried to have Mr. Curtis admitted to the Arkansas State Hospital. The State "denied transport . . . because of inadequate [bed] space."[17] Sheriff Neal's next move was unusual, to say the least: He contacted Plaintiffs' counsel and asked for "assistance" in getting Mr. Curtis adequate medical care.[18] Sheriff Neal "advised that [the County Jail] was incapable of caring for" Mr. Curtis.[19]

Plaintiffs became especially concerned about the County Jail's inability to care for Mr. Curtis because Monroe County Judge Larry Taylor allegedly "intends" to cut the funding of the Monroe County Jail.[20] So Plaintiffs filed this suit, in part seeking to obtain an injunction from this Court either requiring (1) Monroe County to sufficiently fund the County Jail or (2) the State of

---

[15] *Id.*

[16] *Id.* at 2–3. The Amended Complaint doesn't explain the nature or uses of these medications. At oral argument, County Defendants' counsel explained that these medications are "for the very issues [Nurse Gore] addresse[d] in her reports." Feb. 10, 2023 Hr'g Tr. (Rough) at 26. Plaintiffs' counsel at no point disputed that characterization.

[17] Am. Compl. (Doc. 11) ¶ 10.

[18] *Id.* ¶¶ 10–11.

[19] *Id.*

[20] *Id.* ¶ 12.

Arkansas to admit Mr. Curtis to the State Hospital.[21]  Plaintiffs feared that in the absence of such

an order, Mr. Curtis would be unnecessarily "institutionalized."[22]

The facts on the ground have materially changed since Plaintiffs filed the operative

Complaint.[23]  The most important development is that Mr. Curtis is now at the Arkansas State

Hospital.[24]  In Mr. Curtis's state criminal case (for which he is a pretrial detainee), the state judge

ruled that Mr. Curtis was not competent to proceed to trial.[25]  The state judge then ordered that Mr.

Curtis be transported to the Arkansas State Hospital for the purposes of "restoration."[26]  So, on or

about December 12, 2022, Mr. Curtis entered the custody of the Arkansas State Hospital.[27]  At

oral argument, State Defendants' counsel represented to the Court (and Plaintiffs did not dispute)

that Mr. Curtis is expected to remain in the Arkansas State Hospital until approximately October

of 2023.[28]  It is currently unclear whether Mr. Curtis will be transported back to the Monroe County

Jail upon restoration of his competency, or whether he will instead remain at the Arkansas State

Hospital for the duration of his pretrial detention.

---

[21] *See id.* ¶¶ 21, 42, 64; Feb. 10, 2023 Hr'g Tr. (Rough) at 54–56.

[22] *See* Am. Compl. (Doc. 11) ¶¶ 21–22; *see also id.* at pp. 10–11, ¶¶ 36–42.  It is not at all clear what Plaintiffs mean by "institutionalized."  Plaintiffs could mean incarceration in a state prison.  Or perhaps Plaintiffs are saying that Mr. Curtis will be sent to some sort of asylum that is less preferable than the Arkansas State Hospital.  The fact that the operative Complaint is so unclear on such a central aspect of the case is illustrative of the many deficiencies with Plaintiffs' claims.

[23] The Court can consider these factual developments at the motion-to-dismiss stage, even though they are not alleged in the operative Complaint, because (1) these developments implicate the Court's subject-matter jurisdiction with respect to Plaintiffs' claims for prospective injunctive relief and (2) the parties consented to the Court taking judicial notice of the developments.  *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 11–12.

[24] *See id.* at 2.

[25] *See Arkansas v. Curtis*, 48CR-21-40, May 2, 2022 Judge Note (stating that Mr. Curtis was deemed unfit to proceed on October 6, 2021).

[26] *See Curtis*, 48CR-21-40, Oct. 17, 2022 Petition ¶ 1; *Curtis*, 48CR-21-40, Jan. 30, 2023 Judge Note (stating that Mr. Curtis is at the Arkansas State Hospital "awaiting restoration of fitness to proceed").

[27] *See Curtis*, 48CR-21-40, Jan. 30, 2023 Judge Note.

[28] *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 10–11.

## II.     Dwight Houston

There's far less information available with respect to Mr. Houston.  He is still in the Monroe County Jail.[29]  His attorney doesn't know whether he is in the County Jail as a pretrial detainee or as the result of a conviction.[30]  Mr. Houston's medical issues are physical, rather than mental: He allegedly suffers from hypertension, foot pain, and swollen legs.[31]  Like Mr. Curtis, he is receiving prescription medication.[32]  Also like Mr. Curtis, there's no allegation of what the County Jail could or should be doing to better care for Mr. Houston.[33]  Unlike Mr. Curtis, there's no suggestion that anyone tried to get Mr. Houston admitted to the State Hospital or any other alternative facility. That's really all there is to know with respect to Mr. Houston.

### DISCUSSION

Plaintiffs allege that the State and County Defendants have violated, and continue to violate, the United States Constitution, the Rehabilitation Act, and the Americans with Disabilities Act.[34]  Plaintiffs seek compensatory damages for the past violations and injunctive relief to put a stop to the ongoing violations.  But because there are not any plausibly alleged past, present, or imminent future violations, Plaintiffs' case will be dismissed.[35]

---

[29] *See id.* at 2.

[30] *See id.*

[31] *See* Ex. 1 (Gore Report) to Am. Compl. (Doc. 11–1).

[32] *Id.* at 2; *see supra* note 16.

[33] *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 12–14 (Plaintiffs' counsel admitting that the allegations regarding Mr. Houston are "not as detailed as [counsel] would like").

[34] Am. Compl. (Doc. 11) ¶ 1; *see* Feb. 10, 2023 Hr'g Tr. (Rough) at 42–43, 49, 58–59 (Plaintiffs' counsel agreeing that the deliberate-indifference, Rehab Act, and ADA claims are the only claims in this case).

[35] Plaintiffs at one point in the operative Complaint purport to be bringing claims under the Arkansas Civil Rights Act. *See* Am. Compl. (Doc. 11) ¶ 1.  But aside from that in-passing invocation of ACRA, there are no specific allegations or arguments about what conduct by Defendants violated the Arkansas Constitution or any other source of state law. Accordingly, any and all ACRA claims (to the extent any such claims are in the case at all) are dismissed as insufficiently pled.

I.       **Constitutional Claims—Deliberate Indifference**

The Constitution entitles persons in government custody—whether as pretrial detainees or

incarcerated convicts—to "adequate" medical care.[36]  What the Constitution considers "adequate"

in a prison or a jail is significantly different than what a member of the general public would

consider "adequate" for his or her own purposes.  When a free person is upset with the medical

care he or she has received, that person can sue the medical provider for common law negligence.

The free person doesn't have to show that the medical provider had a culpable state of mind, such

as malice or recklessness.  It's enough for a free person to prove that, under the circumstances, the

medical provider made an unreasonable decision, even if it was a good-faith mistake.  A pretrial

detainee or incarcerated convict, however, carries a much heavier burden when trying to allege a

violation of the Constitution.

Government-provided medical care in a jail or prison is constitutionally inadequate only

when the relevant government official acts with "deliberate indifference" to the plaintiff's "serious

medical needs."[37]  The seriousness of the medical need is an objective inquiry.  The medical

condition must have been "diagnosed by a physician" or otherwise be "so obvious that even a

layman would recognize" the need for medical attention.[38]  Deliberate indifference is subjective.

When a government official is sued in his or her individual capacity, the relevant question is

whether that defendant knew, yet essentially ignored, that the plaintiff's serious medical needs

---

[36] *See Hartsfield v. Colburn*, 371 F.3d 454, 456–57 (8th Cir. 2004).  Plaintiffs refer interchangeably to the Eighth
Amendment and the Fourteenth Amendment when discussing their claims about constitutionally inadequate medical
care.  *See* Am. Compl. (Doc. 11) ¶¶ 1, 57; Br. in Supp. of Pls.' Resp. to Defs.' Mots. to Dismiss (Doc. 20) at 2.  That
back and forth likely has something to do with the fact that Plaintiffs didn't know (or didn't try to specify) whether
Mr. Curtis and Mr. Houston were pretrial detainees or incarcerated as a result of a conviction.  Ultimately, it doesn't
matter whether the inadequate-medical-care claims arise under the Eighth or Fourteenth Amendment.  The deliberate-
indifference standard governs the analysis here either way.  *See Hartsfield*, 371 F.3d at 456–57.

[37] *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 360 (8th Cir. 2023) (citation omitted).

[38] *Id.* (citation omitted).

were going unmet.[39]  And a plaintiff suing the governmental entity itself must show that there was some type of government-wide decision (e.g., a statute, regulation, policy, or custom) that mandated or otherwise caused the deliberate indifference.[40]  The Court will assume that Mr. Curtis's and Mr. Houston's alleged medical needs are sufficiently serious for purposes of an inadequate-medical-care claim.  Even with the benefit of that assumption, the constitutional claims fail.  The operative Complaint does not plausibly allege that any Defendant (or the governmental entity for which that Defendant works) was deliberately indifferent to the serious medical needs.

### A.    Individual-Capacity Claims

Plaintiffs sue Judge Taylor in his individual capacity for failing to provide Mr. Curtis and Mr. Houston with adequate medical care in the Monroe County Jail.[41]  Plaintiffs sue Mr. Hill in his individual capacity for refusing to admit Mr. Curtis into the Arkansas State Hospital.[42]  These individual-capacity claims will be dismissed because the operative Complaint does not adequately allege that either Judge Taylor or Mr. Hill had the requisite subjective knowledge of any unmet serious medical need.

Let's begin with Judge Taylor.  There are no allegations whatsoever that Judge Taylor knew about Mr. Houston's medical issues.  So any claim against Judge Taylor that is premised on Mr. Houston's medical issues is a non-starter.  And with respect to Mr. Curtis, the operative Complaint alleges only that Mr. Curtis "brought suit against the Monroe County Sheriff" at some

---

[39] *Id.*  An individual-capacity claim often raises the issue of qualified immunity.  Because the operative Complaint doesn't plausibly allege a constitutional violation (or even come particularly close to doing so), the Court need not engage in the "clearly established" inquiry.  *See id.* at 359.

[40] *See, e.g.*, *Turner v. Mull*, 784 F.3d 485, 489–90 (8th Cir. 2015); *Haslar v. Megerman*, 104 F.3d 178, 179–80 (8th Cir. 1997).

[41] Am. Compl. (Doc. 11) ¶ 1; *see* Feb. 10, 2023 Hr'g Tr. (Rough) at 42–43.

[42] *See* Am. Compl. (Doc. 11) ¶¶ 1, 55–65; Feb. 10, 2023 Hr'g Tr. (Rough) at 50–51.  There is no claim against Mr. Hill regarding Mr. Houston.  That is because Mr. Houston's case has nothing to do with entry into the Arkansas State Hospital.  *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 12–13.

unidentified point in the past and that "[s]uch lawsuit was notice[] to Judge Taylor of his violations

of federal and state law."[43]  This falls woefully short of plausibly alleging subjective knowledge.

The allegation does not suggest that the previous lawsuit had anything to do with inadequate

medical care in the County Jail.[44]  Even if it had, there is no allegation that the settlement contained

any admission of wrongdoing by Judge Taylor or other County actors.  And there's no allegation

that Judge Taylor even knew about the prior lawsuit, except perhaps for the conclusory allegation

that the lawsuit was notice to Judge Taylor.[45]

The claim on behalf of Mr. Curtis against Mr. Hill is even weaker.[46]  There's no allegation

that tries to explicitly attribute knowledge of Mr. Curtis's mental illness to Mr. Hill.[47]  The only

thing that comes close is the allegation that the agency for which Mr. Hill works rejected Sheriff

Neal's effort to have Mr. Curtis admitted to the State Hospital.[48]  There's no allegation that Mr.

Hill makes patient-by-patient admission decisions.  So there's nothing to plausibly allege that Mr.

Hill had any personal involvement in, or knowledge of, Mr. Curtis's rebuffed admission

application in the first place.  Moreover, it is a pretty big leap to think that a request for admission

to the State Hospital is, on its own, sufficient to give Mr. Hill subjective knowledge that Mr.

---

[43] Am. Compl. (Doc. 11) ¶ 8; *see also* Feb. 10, 2023 Hr'g Tr. (Rough) at 43–46 (Plaintiffs' counsel conceding that the prior-lawsuit allegation is the only allegation of Judge Taylor's subjective knowledge).

[44] At oral argument, Plaintiffs' counsel proposed a radical construction of the operative Complaint—that the prior lawsuit was based on the since-abandoned practice of strapping Mr. Curtis to a restraint chair.  *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 45.  Even if the Court could somehow accept that construction, it's not relevant to whether Judge Taylor had knowledge that Mr. Curtis's medical needs were not being met during the period of time that is relevant to the lawsuit we are dealing with today.  *See supra* note 9.

[45] Because the operative Complaint does not say whether the Monroe County Sheriff was sued individually or in an official capacity, the relevant allegation is only speculation that a settled lawsuit against the Monroe County Sheriff would automatically provide any kind of notice to the Monroe County Judge.  Such speculation is inappropriate.

[46] Mr. Hill moved to dismiss the individual-capacity claim against him for lack of service of process.  *See* Br. in Supp. of State Defs.' Mot. to Dismiss (Doc. 16) at 1; Feb. 10, 2023 Hr'g Tr. (Rough) at 36–37.  This issue was discussed at oral argument, and, with the agreement of State Defendants' counsel, the Court determined that the insufficient-service issue would not be dispositive.  *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 61–63.

[47] *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 50–51.

[48] *See* Am. Compl. (Doc. 11) ¶¶ 7, 10.

9

Curtis's medical needs are going unmet in the County Jail.  A patient-admission request from a county sheriff on behalf of a pretrial detainee could carry far less severe implications—i.e., the county's facilities are short on bed space or the sheriff views the State Hospital as a better (but not absolutely necessary) place for the detainee to receive medical care.

Finally, there's a more fundamental problem (which relates to all of Plaintiffs' claims in this case): The operative Complaint simply assumes the medical care provided by the County Jail is inadequate.  Plaintiffs offer only the vague allegations that Mr. Houston needs "more extensive, specialized medical treatment, and diagnostic testing than was reported to be available" at the County Jail and that the County Jail does not have "adequate resources to help prevent further decline in [Mr. Curtis's] mental state . . . ."[49]  Those amount to nothing more than conclusory allegations of inadequacy.  Plaintiffs make no allegations as to what medical treatment should be, but isn't, provided by the County Jail.  Plaintiffs don't even identify the standard by which they are assessing "adequacy."  Is the medical care "inadequate" because it isn't state of the art?  Or is it "inadequate" because it falls below the medical-malpractice standard applicable to free-world negligence claims?  The operative Complaint jumps to the conclusion of inadequacy without providing the factual basis necessary to reach that conclusion.

To be sure, nobody is saying that a jail is an ideal place to receive medical treatment.  But the Constitution doesn't guarantee ideal medical care to pretrial detainees or prisoners.  The Constitution doesn't even guarantee them freedom from medical negligence.[50]  It guarantees a minimal standard of care—pretrial detainees' and prisoners' serious medical needs will not be ignored.  The operative Complaint doesn't allege specific factual matter that, taken as true, would

---

[49] Ex. 1 (Gore Report) to Am. Compl. (Doc. 11-1) at 3; Ex. 2 (Gore Report) to Am. Compl. (Doc. 11-2) at 3.

[50] E.g., *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

make it plausible to conclude that any government officials are turning a blind eye to unmet serious medical needs.

Oddly enough, Plaintiffs' most thorough medical-care allegations relate to the medical treatment that Mr. Curtis and Mr. Houston have received.  When a prisoner or pretrial detainee has actually received some form of medical care, "courts hesitate to find" a constitutional violation.[51] The treatment provided to the plaintiff must be so "[g]rossly incompetent or inadequate"[52] that it rises "to the level of criminal recklessness."[53]  Said another way, the "course of treatment" must have "so deviated from professional standards that it" evidences a decision to ignore the plaintiff's medical needs.[54]  Here, Plaintiffs allege that Mr. Curtis and Mr. Houston are receiving prescription medications.  And while the operative Complaint doesn't explicitly say so, the County Defendants' (undisputed) explanation is that those medications are being used to treat the medical conditions that prompted Plaintiffs to bring this suit.[55]  Such allegations don't plausibly allege that the medical care provided by the County Jail was inadequate by the Constitution's "difficult standard" of deliberate indifference.[56]

---

[51] *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

[52] *Id.*

[53] *Leonard*, 59 F.4th at 360.

[54] *Smith*, 919 F.2d at 93.

[55] *See supra* note 16.

[56] *See Leonard*, 59 F.4th at 360 (citation omitted).  The operative Complaint alleges that Sheriff Neal admitted that the County Jail "was incapable of caring for each Plaintiff . . . ." Am. Compl. (Doc. 11) ¶ 10.  But the embedded inadequacy allegation (i.e., Sheriff Neal's characterization of things) is both conclusory and irrelevant.  What medical care is needed by Mr. Curtis and Mr. Houston, and whether the medical care provided by the County Jail is "adequate," are ultimate conclusions.  So Plaintiffs need to allege actual facts (i.e., events that have occurred or things that should have happened but didn't) that would allow for the plausible conclusion that the medical care in the County Jail is of such low quality that it is "inadequate."  Furthermore, Sheriff Neal's alleged admission is irrelevant because the quality of the health care is not the central focus of a constitutional deliberate-indifference claim.  A deliberate-indifference claim is primarily about whether a government actor knows, but ignores, that a person in government custody has a serious medical need that is going unmet.  If anything, Sheriff Neal has done the exact opposite of ignoring Mr. Curtis's and Mr. Houston's medical needs by (1) trying to get Mr. Curtis into the State Hospital and (2) allegedly instigating this lawsuit.  Finally, there's nothing to suggest that Sheriff Neal told Judge Taylor or any State Defendant that either Mr. Houston or Mr. Curtis were not receiving the constitutional floor of medical care in the County Jail.

11

### B.     Official-Capacity Claims

Plaintiffs sue all Defendants in their official capacities.[57]  An official-capacity suit is really

a suit against the governmental entity for which the named defendant works.[58]  In this case, then,

Plaintiffs are suing the State of Arkansas and Monroe County for providing constitutionally

inadequate medical care.  None of Plaintiffs' official-capacity claims has legs.

With respect to the State of Arkansas, Plaintiffs have asked for an injunction requiring the

State to (1) admit Mr. Curtis to the State Hospital and (2) vastly increase the amount of resources

expended on mental-health services.[59]  This Court is entirely without the constitutional authority

to grant such relief.  Because Mr. Curtis will be in the Arkansas State Hospital for the foreseeable

future, Plaintiffs have been given the hospital-admission relief they sought for Mr. Curtis.

Plaintiffs' counsel has admitted as much.[60]  Accordingly, Plaintiffs have lost their Article III

standing to seek an injunction requiring Mr. Curtis to be admitted to the State Hospital.  Plaintiffs'

more extreme request—that this Court order the State of Arkansas to open additional mental-health

facilities, including regional facilities, and add more beds to existing facilities—is dead on

arrival.[61]  A federal district court cannot enter an injunction ordering a state government to spend

state funds.[62]  And Plaintiffs want this Court to do that and a whole lot more.  They essentially

---

[57] Am. Compl. (Doc. 11) at 1.

[58] *E.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

[59] *See* Am. Compl. (Doc. 11) at 18 & ¶ 64; *see also id.* at p. 10, ¶ 37; Feb. 10, 2023 Hr'g Tr. (Rough) at 5, 55.  To the extent that Plaintiffs seek monetary damages from the State of Arkansas for violations of the United States Constitution, that requested relief is barred by the Eleventh Amendment to the United States Constitution.  *See Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989).

[60] Feb. 10, 2023 Hr'g Tr. (Rough) at 5–6.

[61] *See id.* at 54–58.

[62] *See Edelman v. Jordan*, 415 U.S. 651, 666–68 (1974) (drawing a distinction between equitable relief that directly orders the payment of state funds and equitable relief that incidentally requires a state to spend money "in order to shape [its] conduct to the mandate of the Court's decrees").

want a full-scale overhaul of the State of Arkansas's entire mental-health-services apparatus. That's a step this Court cannot (and would not) take.

Even putting the foregoing aside, another issue for Plaintiffs' claim against the State of Arkansas is that there's no plausibly alleged constitutional violation to remedy in the first place. Plaintiffs argue that Mr. Curtis was originally denied admission to the State Hospital because the State of Arkansas assigns lower admission priority to pretrial detainees who are housed in county jails.[63]  But there are no allegations, for example, that the State chose to allocate its resources in that way despite incontrovertible evidence that prisoners' and pretrial detainees' serious mental-health needs were going unmet in county jails.  As it currently stands, then, the operative Complaint alleges nothing more than Plaintiffs' dissatisfaction with the way Mr. Curtis was impacted by the State's policy decision.  That doesn't cut it.[64]

The State's admission-priority decision is the kind of decision any government faced with the need to allocate scarce resources will have to make. It is ultimately a state legislative—not a federal judicial—decision.[65]  And it isn't the kind of decision that, standing alone, sufficiently indicates a reckless disregard of the medical needs of people with mental illnesses like Mr. Curtis. It's far more plausible that the State of Arkansas's decisionmakers knew county jails already have a constitutional imperative to provide some minimal level of medical care.  So, by prioritizing the admission of patients who are not already in county jails (i.e., not already receiving care), the State was likely trying to maximize its available mental-health-service resources.

---

[63] Am. Compl. (Doc. 11) ¶¶ 7, 10; Pls.' Resp. to Defs.' Mots. to Dismiss (Doc. 19) ¶ 1.

[64] *Cf. United States v. Ronning*, 6 F.4th 851, 853 (8th Cir. 2021) (collecting cases and reaffirming the long-standing rule that disparate impact is not enough on its own to evidence a culpable mens rea).

[65] *See Winters v. Ark. Dep't of Health & Human Servs.*, 491 F.3d 933, 937 (8th Cir. 2007).

Against Monroe County, Plaintiffs seek both injunctive and compensatory relief. Specifically, Plaintiffs want an injunction ordering the County to increase the amount of funds distributed to the County Jail. And Plaintiffs want Mr. Curtis and Mr. Houston to be financially compensated for the harm they have allegedly suffered as a result of the inadequate medical care provided in the County Jail. To avoid dismissal, Plaintiffs must plausibly allege that (1) an official acting on behalf of Monroe County violated the Constitution by being deliberately indifferent to a serious medical need and (2) "the violation resulted from" an official "policy" or an "unofficial custom . . . ."[66] Plaintiffs don't do either of these things.

Plaintiffs have not identified anyone acting on behalf of Monroe County who was deliberately indifferent to a serious medical need. As discussed above, Judge Taylor was not deliberately indifferent. The only other County employee specifically identified in the operative Complaint is Sheriff Neal. Far from turning a blind eye to an unmet medical need, Sheriff Neal has tried to get Mr. Curtis admitted to the State Hospital and allegedly invited this very lawsuit against his own employer in order to help Mr. Curtis and Mr. Houston.

Plaintiffs have also not plausibly alleged any relevant policies or customs. The closest such allegation is the (in Plaintiffs' view) insufficient level of funding distributed to the County Jail by the County government.[67] It is unclear from the operative Complaint whether Judge Taylor or the Monroe County Quorum Court is the final decisionmaker for purposes of funding the County Jail. But it ultimately doesn't matter who is responsible—much like Plaintiffs' claims against the State of Arkansas, the County's resource-allocation decisions do not in and of themselves rise to

---

[66] See *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (internal quotation marks and citations omitted). The second prong could also be satisfied by showing that the relevant County decisionmakers failed to sufficiently train County employees. *See id.* But Plaintiffs aren't advancing a failure-to-train theory in this case.

[67] In the operative Complaint, Plaintiffs provide a list of (entirely conclusory) allegations that purport to allege the existence of numerous unconstitutional policies. *See* Am. Compl. (Doc. 11) at p. 14, ¶ 42. Due to their conclusory nature, these allegations are insufficient to state a viable claim.

the level of deliberate indifference.  Again, there's no plausible allegation that Judge Taylor had knowledge of any medical-treatment shortcomings in the County Jail.  So if he made the funding decision, there's nothing to indicate he did it with "conscious[] disregard" of anyone's unmet serious medical needs.[68]  And there's absolutely no allegation of any kind attributing knowledge to the Monroe County Quorum Court.  So any funding decisions by that body cannot plausibly be said to have been infected by an unconstitutional deliberate indifference.  Accordingly, Plaintiffs' claims against Monroe County will be dismissed.

## II.     Rehab Act & ADA Claims

Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act both prohibit public entities from discriminating on the basis of disability.[69]  The disability discrimination claims are brought only on behalf of Mr. Curtis.[70]  And these claims are brought only against the State of Arkansas and Monroe County (via the official-capacity claims against Governor Sanders, Mr. Hill, Judge Taylor, and Sheriff Neal).  Plaintiffs concede that neither § 504 nor Title II of the ADA allow for individual-capacity lawsuits.[71]

Plaintiffs' disability discrimination claims are based on the United States Supreme Court's decision in *Olmstead v. L.C. ex rel. Zimring*.[72]  There, the Supreme Court held that unlawful

---

[68] *Leonard*, 59 F.4th at 360.

[69] *See* 29 U.S.C. § 794 (Rehab Act § 504); 42 U.S.C. § 12132 (ADA Title II).  The Eighth Circuit has held that the substantive analysis required by § 504 and Title II is the same.  *E.g.*, *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999).

[70] The operative Complaint could be read as alleging that Mr. Houston also faces the risk of institutionalization in violation of the Rehab Act and the ADA.  *See, e.g.*, Am. Compl. ¶ 22 ("[P]laintiffs allege that *they* are at serious risk of unnecessary institutionalization . . . ." (emphasis added)).  But at oral argument, Plaintiffs' counsel clarified that the institutionalization fears relate solely to Mr. Curtis.  *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 12–14.  To the extent Plaintiffs are trying to say Mr. Houston has been discriminated against simply because the County Jail doesn't provide "adequate" medical care, such a claim fails because the operative Complaint doesn't plausibly allege that the County Jail's medical care is inadequate.  *See supra* pp. 10–11.

[71] Br. in Supp. of Pls.' Resp. to Defs.' Mots. to Dismiss (Doc. 20) at 5 n.1.

[72] 527 U.S. 581 (1999); *see* Am. Compl. (Doc. 11) ¶ 1.

disability discrimination can occur in the government-provided-medical-care context when, "[i]n order to receive needed medical services, persons with mental disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice."[73]  In *Olmstead*, the Supreme Court found that such discrimination might have occurred when the relevant state-government officials had previously determined that the mental-health-patient plaintiff could be treated in the community without being institutionalized (i.e., could be treated if given a reasonable accommodation to existing state practices), but the state officials simply decided to keep the mental-health patient institutionalized without sufficient justification.[74]

Plaintiffs say *Olmstead* means that Monroe County and the State of Arkansas have discriminated, and are discriminating, against Mr. Curtis by failing to provide him with adequate medical care.  And that alleged discrimination is forcing Mr. Curtis to face the risk of being "institutionalized."[75]  Plaintiffs' reliance on *Olmstead* is misplaced.

Eighth Circuit precedent forecloses any idea that *Olmstead* gives rise to viable disability discrimination claims here.  In *Winters v. Arkansas Department of Health and Human Services* (a case with strikingly similar facts to the case at bar), the Eighth Circuit held there was no discrimination when (1) the county jail did not "den[y] medical care," (2) the county sheriff "attempted to obtain care and proper placement for" the pretrial detainee, and (3) no State "treatment professionals had yet had the opportunity to evaluate [the pretrial detainee] or

---

[73] 527 U.S. at 601.

[74] *Id.* at 601–03.  The Supreme Court remanded the case for the lower courts to determine in the first instance whether the State's justification for keeping the plaintiffs institutionalized was sufficient to avoid liability.  *See id.* at 607.

[75] *See, e.g.*, Am. Compl. (Doc. 11) ¶¶ 22, 25.  Again, it isn't clear what Plaintiffs mean by "institutionalized."  *See supra* note 22.

recommend a placement for him," so *Olmstead*'s "least restrictive placement standard did not come into play."[76]   There is no meaningful daylight between *Winters* and this case.   Plaintiffs' counsel all but conceded that point at oral argument.[77]   Plaintiffs think that *Winters* was erroneously decided, but that is a question for the Eighth Circuit.

Even if Plaintiffs had been able to plausibly allege violations of § 504 and Title II, it would be a fairly hollow victory.   Assuming the case proceeded all the way to trial, and that Plaintiffs were successful in establishing any statutory violations at that trial, the only requested relief that Plaintiffs could possibly obtain would be a declaratory judgment.[78]   Plaintiffs request for monetary damages from both the State of Arkansas and Monroe County wouldn't make it past the motion-to-dismiss stage.   Section 504 and Title II allow for monetary damages only when the public entity engages in intentional discrimination.[79]   Intentional discrimination occurs when the public entity is "deliberate[ly] indifferen[t] to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights."[80]   There's no allegation (plausible or otherwise) that any State or County decisionmakers knew, yet ignored, that the mental-health services provided to Mr. Curtis were so grossly inadequate as to be discriminatory under § 504 and Title II.   So there are no viable monetary damages claims.[81]

---

[76] 491 F.3d at 936–37.

[77] *See* Feb. 10, 2023 Hr'g Tr. (Rough) at 57–58.

[78] *See* Am. Compl. (Doc. 11) at 18 (requesting a declaration from the Court that Defendants violated § 504 and Title II).

[79] *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) ("[C]laims under both" Title II and § 504 "require proof of discriminatory intent to recover compensatory damages.").

[80] *Id.* (citation omitted).

[81] The Eleventh Amendment would also bar any Title II monetary damages claims against the State of Arkansas because Title II's abrogation provision can extend only to conduct that also violates the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 158–59 (2006); *Klingler v. Dir., Dep't of Revenue*, 455 F.3d 888, 893 (8th Cir. 2006) ("Title II also validly abrogates sovereign immunity for conduct that is in itself unconstitutional."); *supra* pp. 7–15 (concluding that Plaintiffs have not plausibly alleged a constitutional violation).   The same isn't necessarily true for the § 504 claims, because the Rehab Act abrogates sovereign immunity by way of Congress's Spending Clause

So too for all of Plaintiffs' requests for injunctive relief. Plaintiffs ask for the same injunction here that they did with respect to their constitutional claims: Plaintiffs want (1) the State of Arkansas to admit Mr. Curtis to the State Hospital, (2) the State of Arkansas to vastly increase its mental-health-services expenditures, and/or (3) Monroe County to increase the County Jail's funding in order to improve the mental-health services provided to pretrial detainees. The State Hospital-admission request is now moot for the reasons given above.[82] Similarly, because Mr. Curtis will be in the Arkansas State Hospital for the foreseeable future, he no longer has Article III standing to seek an injunction related to the Monroe County Jail's medical services. Finally, *Winters* makes quite clear that neither § 504, nor the ADA, nor the Constitution authorizes a federal district court to enter an injunction that simply replaces the State of Arkansas's "decisions of how to best allocate available resources . . . ."[83] So Plaintiffs' request for an expansion of Arkansas's government-provided mental-health services wouldn't make it past the motion-to-dismiss stage.

## CONCLUSION

For the reasons given above, the Court GRANTS Defendants' Motions to Dismiss.[84] Plaintiffs' Amended Complaint is DISMISSED without prejudice.

IT IS SO ORDERED this 14th day of March 2023.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

power, not its Fourteenth Amendment enforcement power. *See Jim C. v. United States*, 235 F.3d 1079 (8th Cir. 2000) (en banc); *see also Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 635 (8th Cir. 2014) (per curiam).

[82] *See supra* p. 12.

[83] *See* 491 F.3d at 937.

[84] Cnty. Defs.' Mot. to Dismiss (Doc. 13); State Defs.' Mot. to Dismiss (Doc. 15).